IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF ARBITRATION BETWEEN<br><br>ARINC INCORPORATED<br>2551 RIVA ROAD<br>ANNAPOLIS, MD 21401<br><br>Petitioner<br><br>v.<br><br>MILLENNIUM 3 TECHNOLOGIES LLC<br>4040 EAST RAYMOND<br>PHOENIX, AZ 85040<br><br>Respondent | Civil Action No: _____ |

## PETITION TO COMPEL ARBITRATION

Petitioner, ARINC Incorporated ("ARINC"), submits the following Petition to Compel Arbitration and states as follows:

### INTRODUCTION

1.    This is a Petition to Compel Arbitration pursuant to 9 U.S.C. §4, a provision of the Federal Arbitration Act.

2.    ARINC seeks an order compelling Respondent, Millennium 3 Technologies LLC ("M3T"), to comply with its written agreement to arbitrate any dispute, controversy, or claim arising out of or relating to an agreement in Washington D.C. under the rules of the American Arbitration Association ("AAA").

### PARTIES

3.    ARINC is a communications and engineering company headquartered in Annapolis, Maryland.  ARINC has served the national defense and transportation industries

since 1929, when it became the licensee for aeronautical communications for the United States government.

4.      M3T is an electrical contractor and audio systems dealer, which describes itself on its website as a leader of "diverse technology in the Southwest's new construction and retrofit marketplace" and as a "single source…for your security needs," with offices in Las Vegas, Nevada and Phoenix, Arizona.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. §4 and 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and M3T has alleged claims against ARINC in excess of $75,000.

6.      The venue for this action is proper pursuant to the Federal Arbitration Act, 9 U.S.C. §4 because the Washington D.C. is designated as the place of arbitration in a written agreement between ARINC and M3T.  Venue is also proper in this Court because M3T waived all objections to venue and consented to venue in this federal judicial district by entering into a written agreement with ARINC, which designates Washington D.C. as the place of arbitration.

## STATEMENT OF FACTS

### *ARINC Contracts with the City of Phoenix, Arizona*

7.      On October 17, 2003, the City of Phoenix, Arizona contracted with ARINC to provide professional services for the installation of a Passenger and Information and Paging System ("PIPS") at the Phoenix Sky Harbor International Airport.  Project features included visual flight information and paging broadcast, automation of the audio and visual message system, immediate system back-up in the event of a failure and integration with the Terminal 4 emergency alarm systems.

2

*ARINC Subcontracts with M3T*

8.      On March 22, 2004, ARINC subcontracted to M3T a portion of the PIPS-related work.  Attached hereto as *Exhibit A* is a true and correct copy of ARINC Subcontract No. 174609 entered into by ARINC and M3T.  Attached hereto as *Exhibit B* is a true and correct copy of the ARINC General Provisions for Commercial Subcontracts and Purchase Orders ("Contract General Provisions"), which are incorporated into Subcontract No. 174609.

*The Arbitration Provision*

9.      The written agreement between ARINC and M3T mandates arbitration in Washington D.C. under the rules of the AAA and governed by Maryland law:  "Any dispute, controversy, or claim arising out of or relating to this Contract or default, termination, or invalidity hereof, shall be settled by arbitration under the rules of the American Arbitration Association.  The place of the arbitration shall be Washington, D.C." (Contract General Provisions, Art. 9 (a) (Exh. B)).  "This Contract shall be governed by the laws of the state of Maryland, excluding its choice of laws rules."  (Contract General Provisions, Art. 2 (a) (Exh. B)).

10.     The forum selection and choice of law terms are important parts of the agreement between the parties.  The parties chose Washington D.C. as the forum for any arbitration. ARINC's headquarters is in nearby Annapolis, Maryland, where ARINC signed the agreement with M3T.  Ultimate project supervision, the engineers in charge of the project, ARINC's engineering and laboratory testing (including consultation with M3T's principal supplier) and expert and fact witnesses are in Maryland.

11.     The Washington D.C. area is an appropriate forum for arbitration of disputes involving a sensitive national transportation hub like an airport.  Federal agencies with

transportation responsibility, such as the Department of Homeland Security and the Federal

Aviation Administration, and readily available expertise in aviation and airport operations (for

examples, the American Association of the Airport Executives and the Airports Council

International – North America) are located here.

12.    Washington D.C. is a neutral and convenient location for arbitration involving

parties and witnesses in Maryland and throughout the country.  M3T's principal supplier and

consultant is in Louisiana.  M3T was replaced on the project by TechSpa, a Florida company.

Both ARINC and M3T purchased and installed equipment for the project at the Phoenix Sky

Harbor International Airport from suppliers throughout the United States.

### M3T Fails to Perform

13.    M3T failed to perform its portion of the PIPS-related work, causing substantial

delay.  After months of delay, ARINC eventually replaced M3T on the project.  On December

11, 2006, TechSpa began work to fix M3T's installation.  With M3T no longer involved, the

problems were promptly resolved.

### M3T Files Suit in Federal Court in Arizona

14.    A controversy has arisen under the written agreement between the parties.

15.    The parties were engaged in protracted settlement negotiations regarding their

respective claims when M3T filed a Complaint in the United States District Court for the District

of Arizona in an action captioned *Millennium 3 Techs v. ARINC Inc.*, No.  CV 08-1257-PHX-

JAT.  Attached hereto as *Exhibit C* is a true and correct copy of that Complaint.

16.    Without informing ARINC that it had filed the lawsuit in the United States

District Court for the District of Arizona, M3T sought ARINC's consent to arbitrate in Phoenix,

Arizona, notwithstanding the parties' agreement to submit any disputes arising out of or relating

to their agreement to arbitration in Washington D.C. under the rules of AAA. ARINC declined, choosing to enforce the arbitration clause contained in Article 9(a) of the General Contract Provisions (Exh. B). M3T then served the Complaint on ARINC.

17.    Counsel for ARINC has informed M3T's counsel on multiple occasions, both orally and in writing, of ARINC's position that arbitration should proceed in Washington D.C. in accordance with the parties' written agreement. Attached as *Exhibits D* and *E* are copies of correspondence from ARINC's counsel to M3T's counsel dated July 21, 2008 and August 8, 2008, respectively informing M3T of ARINC's position regarding arbitration.

18.    The purported basis for M3T's Complaint seeking declaratory relief in the Arizona action, *Millennium 3 Techs v. ARINC Inc.*, No. CV 08-1257-PHX-JAT, is an Arizona statute, A.R.S. §32-1129.05. M3T claims that the statute voids the parties' contractual choice of arbitration forum and law. However, the statute, which is not applicable in any event, is preempted by the Federal Arbitration Act with respect to arbitration agreements.

19.    It is evident that M3T, despite its written agreement to arbitrate in Washington D.C. under the rules of AAA, intends to proceed with the lawsuit against ARINC in the United States District Court for the District of Arizona.

## COUNT I:
## REQUEST FOR ORDER DIRECTING ARBITRATION TO PROCEED IN ACCORDANCE WITH THE TERMS OF THE PARTIES' WRITTEN AGREEMENT

20.    Petitioner restates and incorporates by reference each allegation set forth in the preceding paragraphs of this Petition to Compel Arbitration.

21.    ARINC and M3T are parties to a valid and enforceable written agreement that mandates arbitration of any claims arising out of or relating to the agreement between the parties in Washington D.C. under the rules of AAA.

22.     ARINC and M3T's written agreement involved interstate commerce.

23.     M3T's claims are subject to the arbitration provisions of the agreement between ARINC and M3T.

24.     Respondent M3T has wrongfully refused to arbitrate in Washington D.C. under the written agreement between the parties.

25.     Pursuant to the strong federal policy favoring enforcement of arbitration agreements, ARINC is entitled to an order directing M3T to pursue any claims arising out of or relating to the agreement between the parties through arbitration in Washington D.C. subject to the rules of AAA.

**WHEREFORE,** Petitioner ARINC respectfully requests that this Court enter an Order:

1.     Directing the parties to arbitrate any claims arising out of or relating to the agreement between the parties through arbitration in Washington D.C. subject to the rules of AAA;

2.     awarding costs, expenses and attorney's fees associated with this Petition to Compel Arbitration to Petitioner; and

3.     providing such further and other relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

Dwight W. Stone, II
Whiteford Taylor Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
Telephone: (410) 347-8700
Facsimile: (410) 752-7092
dstone@wtplaw.com
*Counsel for Petitioner ARINC Incorporated*

*EXHIBIT A*

# ARINC

## SUBCONTRACT No. 174609

This Subcontract is entered into this 22nd day of March, 2004 by and between ARINC, Incorporated, with a place of business at 2551 Riva Road, Annapolis, Maryland 21401 (hereinafter called "ARINC"), and Millennium 3 Technologies, with a place of business at 4040 East Raymond, Phoenix, Arizona 85040 (hereinafter called "Subcontractor").

### RECITALS

WHEREAS, The City of Phoenix Aviation Department (hereinafter referred to as "ARINC's Customer") has entered into Contract No.108705 (hereinafter referred to as the "Prime Contract") with ARINC for the Passenger Information and Paging System project at Phoenix Sky Harbor Airport; and

WHEREAS, ARINC desires to have Subcontractor perform the work called for by this Subcontract and Subcontractor desires to so perform upon the Terms and Conditions of this Subcontract as set forth herein;

NOW, THEREFORE, the Parties do mutually agree as follows:

## 1.  STATEMENT OF WORK

(a)  Subcontractor shall perform the work and provide all deliverables specified in Exhibit A, "Scope of Work for Phoenix Sky Harbor International Airport", Revision 1, dated 6 November 2003, which is hereby incorporated into and made part of this subcontract.

(b)  Specific deliverables, quantities, due dates, reporting requirements, and timeframes are set forth in Exhibit A.

(c)  Subcontractor shall not commence work on the tasks and deliverables specified as "Optional Items" in Attachment #1, "Project Deliverables", to Exhibit A, without ARINC's written direction to proceed.

## 2.  PERIOD OF PERFORMANCE

(a)  The period of performance under this subcontract shall commence on November 7, 2003 and shall continue through all warranty periods specified in Exhibit A, "Scope of Work for Phoenix Sky Harbor International Airport", Revision 1, dated 18 March 2004. Work performed by Subcontractor prior to the execution of this Subcontract, in accordance with Exhibit A and as accepted by ARINC, shall be deemed eligible for compensation in accordance with the terms of this Subcontract as if it had been performed subsequent to the execution of this Subcontract.

(b)  The period of performance may be changed only by mutual agreement of the parties and as by evidenced by a written modification to this subcontract.

ARINC Subcontract 174609
Millennium 3 Technologies

3.  CONSIDERATION AND PAYMENT

(a) In consideration for the timely completion of all work required under this subcontract, ARINC shall pay Subcontractor the firm, fixed price sum of U.S. $5,879,526.00, in accordance with the payment terms set forth in Exhibit A.

(b) Payment terms are Net 30 days.

(c) Payment shall be deemed to have been made as of the date of ARINC's mailed payment or electronic funds transfer.

(d) Unless otherwise specified, all prices include all applicable federal, state, and local taxes, as well as duties, tariffs, and similar fees imposed by any government, all of which shall be listed separately on the invoice. Prices shall not include any taxes, impositions, charges, or exactions for which ARINC has furnished a valid exemption certificate or other evidence of exemption.

4.  INVOICES

(a) All invoices under this subcontract must reference this subcontract number 174609 and must identify the period of time worked and identification of the task(s) completed during that period.

(b) Invoices must be submitted to:

> ARINC Incorporated
> 2551 Riva Road
> Annapolis, MD 21401
> Attention:  Accounts Payable

5.  NOTICES

Any notice or demand required or permitted hereunder shall be sufficiently given when set forth in writing and delivered in person or by mail,

To ARINC:

John A. Uldrich
Sr. Subcontracts Specialist
ARINC Incorporated
M/S 6-3063
2551 Riva Road
Annapolis, Maryland  21401

To Subcontractor:

Steven Grosvenor
President
Millennium 3 Technologies
4040 East Raymond
Phoenix, Arizona 85040

ARINC Subcontract 174605
Millennium 3 Technologies

6.    ENTIRE AGREEMENT

This subcontract, including other documents incorporated herein by reference or attachment constitutes the entire understanding and agreement between the parties hereto and supersedes and replaces any prior representations, understandings or agreements between ARINC and Subcontractor, oral or written, with respect to the subject matter hereof.  It shall not be varied except by an instrument in writing of subsequent date duly executed by authorized representatives of the parties.

7.    SUBCONTRACT ORDER OF PRECEDENCE

In the event of a conflict in the provisions of this subcontract, including between any of the incorporated documents listed below, as accepted by ARINC and as they may be amended, the following shall prevail in the order set forth below:

1.    This subcontract document
2.    Exhibit B, "Phoenix PIPS Special Terms and Conditions", dated February 3, 2004
3.    ARINC General Provisions for Commercial Subcontracts and Purchase Orders [ARINC 400-1 (08/01)]
4.    Exhibit A, "Scope of Work for Phoenix Sky Harbor International Airport", Revision 1, dated 18 March 2004

All of the above listed documents are incorporated herein and made a part of this Subcontract by reference.

IN WITNESS WHEREOF, the parties hereto have, through duly authorized officials, executed this Subcontract agreement effective as of the last day and year written below.

ARINC INCORPORATED                          MILLENNIUM 3 TECHNOLOGIES

John A. Uldrich                              Steven Grosvenor
Name                                         Name

Senior Subcontracts Administrator            President  *Managing Member*
Title                                        Title

*[signature]*                                *[signature]*
Signature                                    Signature

22 MARCH 2004                                24 March 2004
Date                                         Date

*EXHIBIT B*



ARINC Incorporated
2551 Riva Road
Annapolis, Maryland 21401-7465
410-266-4000
www.arinc.com/procurement

# General Provisions for Commercial Subcontracts and Purchase Orders

| | | | |
|---|---|---|---|
| 1 | Formation of Contract and Terms and Conditions | 19 | Information of SELLER |
| 2 | Applicable Laws | 20 | Inspection and Acceptance |
| 3 | Assignment and Subcontracting | 21 | Insurance and Liability to Third Parties |
| 4 | Changes | 22 | Intellectual Property |
| 5 | Communication with ARINC Customer | 23 | Language and Standards |
| 6 | Contract Direction | 24 | New Materials |
| 7 | Default | 25 | Offset Credit and Cooperation |
| 8 | Definitions | 26 | Packing and Shipment |
| 9 | Disputes | 27 | Payments, Taxes, and Duties |
| 10 | Excusable Delay | 28 | Precedence |
| 11 | Export Control | 29 | Quality Control System |
| 12 | Extras | 30 | Release of Information |
| 13 | Furnished Property | 31 | Stop Work Order |
| 14 | Gratuities and Kickbacks | 32 | Survivability |
| 15 | Importer of Record | 33 | Termination for Convenience |
| 16 | Indemnification | 34 | Timely Performance |
| 17 | Independent Contractor Relationship | 35 | Waiver, Approval, and Remedies |
| 18 | Information of ARINC | 36 | Warranty |

## 1. Formation of Contract and Terms and Conditions

(a) This Contract is ARINC's offer to SELLER. SELLER's signature on the Contract, acknowledgment, acceptance of payment, or commencement of performance, shall constitute SELLER's unqualified acceptance of this Contract. SELLER's acceptance of this Contract creates a binding Contract between ARINC and SELLER, which shall be governed by the provisions of this Contract.

(b) This Contract integrates, merges, and supersedes all prior offers, negotiations, and agreements concerning the subject matter hereof and constitutes the entire agreement between the Parties.

(c) Additional or differing terms or conditions proposed by SELLER or included in SELLER's acknowledgment hereof are hereby objected to by ARINC and have no effect unless accepted in writing by ARINC.

## 2. Applicable Laws

(a) This Contract shall be governed by the laws of the state of Maryland, excluding its choice of laws rules.

(b) SELLER agrees to comply with all applicable laws, orders, rules, regulations, and ordinances of the United States and the country where SELLER will be performing the Contract. The provisions of the *United Nations Convention on Contracts for International Sale of Goods* shall not apply to this Contract.

(c) In particular, if the Work is to be shipped to, or performed in the United States:

   (1) SELLER represents that each chemical substance constituting or contained in Work sold or otherwise transferred to ARINC hereunder is on the list of chemical substances compiled and published by the Administrator of the Environmental Protection Administration pursuant to the Toxic Substances Control Act (15 U.S.C. Sec. 2601 et seq.) as amended.

   (2) SELLER shall provide to ARINC with each delivery any Material Safety Data Sheet applicable to the Work in conformance with and containing such information as required by the Occupational Safety and Health Act of 1970 and regulations promulgated thereunder, or its state-approved counterpart.

## 3. Assignment and Subcontracting

(a) Any assignment of SELLER's Contract rights or delegation of duties shall be void, unless prior written consent is given by ARINC. However, SELLER may assign rights to be paid amounts due, or to become due, to a financing institution if ARINC is promptly furnished a signed copy of such assignment reasonably in advance of the due date for payment of any such amounts. Amounts assigned to an assignee shall be subject to setoffs or recoupment for any present or future claims of ARINC against SELLER. ARINC shall have the right to make settlements and adjustments in price with SELLER without notice to the assignee.

(b) Without ARINC's written consent, SELLER will not subcontract for the design, development, or procurement of any substantial portion of goods or services under this Contract. This limitation does not apply to SELLER's purchases of standard commercial supplies or raw materials.

## 4. Changes

(a) ARINC may at any time, by written notice, and without notice to sureties or assignees, make changes within the general scope of this Contract in any one or more of the following: (i) drawings, designs, or specifications; (ii) method of shipping or packing; (iii) place of inspection, acceptance, or point of delivery; (iv) reasonable adjustments in quantities or delivery schedules or both; (v)

amount of ARINC-furnished property; and, if this Contract includes services, (vi) description of services to be performed; (vii) quantity of services (i.e., hours to be worked); (viii) time of performance (e.g., hours of the day, days of the week); and (ix) place of performance. SELLER shall comply immediately with such direction.

(b)  If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of this Contract, ARINC shall make an equitable adjustment in the Contract price or delivery schedule or both, and modify the Contract accordingly. Changes to the delivery schedule will be subject to a price adjustment.

(c)  Any claim for an equitable adjustment by SELLER must be submitted in writing to the ARINC Procurement Representative within thirty (30) days from the date of notice of the change, unless the Parties agree in writing to a longer period.

(d)  Failure to agree to any adjustment shall be resolved in accordance with the *Disputes* clause of this Contract. However, nothing contained in this *Changes* clause shall excuse SELLER from proceeding without delay in the performance of this Contract as changed.

5.  **Communication with ARINC Customer**

(a)  ARINC shall be solely responsible for all liaison and coordination with the ARINC customer, including the U.S. Government, as it affects the applicable Prime Contract, this Contract, and any related contract.

(b)  Unless otherwise directed in writing by the authorized ARINC Procurement Representative, all documentation requiring submittal to, or action by, the ARINC customer shall be routed to, or through, the ARINC Procurement Representative, or as otherwise permitted by this Contract.

6.  **Contract Direction**

(a)  Only the ARINC Procurement Representative has authority to amend this Contract. Such amendments must be in writing.

(b)  ARINC engineering and technical personnel may render assistance or give technical advice or discuss or effect an exchange of information with SELLER's personnel concerning the Work hereunder. Such actions shall not be deemed to be a change under the *Changes* clause of this Contract and shall not be the basis for equitable adjustment.

(c)  Action or direction by any ARINC customer shall not be deemed to be a change under the *Changes* clause of this Contract and shall not be the basis for equitable adjustment.

(d)  Except as otherwise provided herein, all notices to be furnished by the SELLER shall be sent to the ARINC Procurement Representative.

7.  **Default**

(a)  ARINC, by written notice, may terminate this Contract for default, in whole or in part, if SELLER fails to comply with any of the terms of this Contract, fails to make reasonable progress in its performance of this Contract, or fails to provide adequate assurance of future performance

SELLER shall have ten (10) days (or a longer period, which ARINC may authorize in writing) to cure any such failure after receipt of notice from ARINC. Defaults involving delivery schedule delays shall not be subject to the cure provision.

(b)  ARINC shall not be liable for any Work not accepted; however, ARINC may require SELLER to deliver to ARINC any supplies and materials, manufacturing materials, and manufacturing drawings that SELLER has specifically produced or acquired for the terminated portion of this Contract. ARINC and SELLER shall agree on the amount of payment for these other deliverables.

(c)  SELLER shall continue all Work not terminated.

(d)  If after termination under paragraph (a), it is later determined that SELLER was not in default, such termination shall be deemed a Termination for Convenience.

8.  **Definitions**

The following terms shall have the meanings set forth below:

(a)  "Contract" means the instrument of contracting (e.g., PO, Purchase Order, or other such designation), including all referenced documents, exhibits, and attachments. If these terms and conditions are incorporated into a master agreement that provides for releases (in the form of a Purchase Order or other such document), the term "Contract" shall also mean the release document for the Work to be performed.

(b)  "ARINC" means ARINC Incorporated.

(c)  "ARINC Procurement Representative" means the person authorized by ARINC's cognizant procurement organization to administer this Contract.

(d)  "PO" or "Purchase Order" as used in any document constituting a part of this Contract shall mean this Contract.

(e)  "SELLER" means the Party identified on the title page of the Contract, with whom ARINC is contracting.

(f)  "Work" means all required articles, materials, supplies, goods, and services constituting the subject matter of this Contract.

9.  **Disputes**

(a)  Any dispute, controversy, or claim arising out of or relating to this Contract or default, termination, or invalidity hereof, shall be settled by arbitration under the rules of the American Arbitration Association. The place of the arbitration shall be Washington, D.C. The language to be used in the arbitral proceedings shall be English. Judgment of the arbitrators shall be final and nonappealable and may be entered in any court having jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of the enforcement. Each Party shall bear its own expenses of the arbitration, but the fees and costs of the arbitrators shall be borne equally between the Parties participating in the arbitration.

(b)  Consistent with the expedited nature of arbitration, each party will, upon the written request of the other party, promptly provide the requesting party with copies of documents relevant to the issues raised by any claim or counterclaim. Any dispute regarding discovery, or the

relevance or scope thereof, shall be determined by the arbitrators, whose determination shall be conclusive. All discovery shall be completed within thirty (30) days following the appointment of the arbitrators.

(c) No action at law or in equity may be commenced by SELLER under or arising from this Contract unless it is brought within one year after the accrual of the cause of action upon which the claim is based, regardless of whether SELLER knew or should have known of the accrual of any such cause of action.

(d) Notwithstanding the foregoing, in the event of a breach or threatened breach by SELLER under the *Information of ARINC* or *Intellectual Property* provisions of this Contract, ARINC may forego arbitration under this provision and seek immediate judicial and equitable remedies, including, but not limited to, injunctive relief or specific performance.

(e) Until final resolution of any dispute hereunder, SELLER shall diligently proceed with the performance of this Contract as directed by the ARINC Procurement Representative.

## 10. Excusable Delay

(a) Subject to (b) and when mutually agreed by the Parties, SELLER shall be excused from, and shall not be liable for, failure of performance due to one or more of the following qualifying events (such list being exclusive):

  (i) War, warlike operation; insurrection; riot; fire, flood, explosion, accident, governmental act; material control regulations or orders; act of God; act of the public enemy; epidemic; quarantine restriction, and strikes; and if

  (ii) Such event was beyond SELLER's control and not occasioned by its negligence or default. The Contract will be extended for that period of time attributable to such event.

(b) To be excused from performance under (a) SELLER shall submit, within ten (10) calendar days of the start of the qualifying event, a written notice stating a complete and detailed description of such event, the date of commencement, an estimate of the probable period of delay, and explanation indicating how such event was beyond the control of the SELLER and not due to its negligence or fault and what efforts SELLER will make to minimize the length of the delay. SELLER shall use its best efforts to cure the qualifying event. SELLER shall submit within ten (10) calendar days of the end of the event a written notice stating the impact to the schedule and evidence justifying the length of the delay. If the delay extends for thirty (30) days or more, this Contract may be terminated by ARINC without additional cost and ARINC may elect to return to SELLER for a refund that portion of the work delivered to ARINC prior to the occurrence of the qualifying event.

(c) Failure of the U.S. Government to issue any required export license, or withdrawal or termination of a required export license by the U.S. Government, shall relieve ARINC of its obligations under this Contract, and shall relieve SELLER of its corresponding obligations.

## 11. Export Control

(a) SELLER agrees to comply fully with all applicable U.S. export control laws and regulations as they may apply to

any hardware, software, information, or the direct product of such information, furnished to SELLER under this Contract. SELLER agrees that it will not permit the re-export of any the above—including to foreign nationals employed by, associated with, or under contract to SELLER or SELLER's lower-tier suppliers—without the authority of an Export License or applicable License Exception.

(b) SELLER agrees to notify ARINC if any deliverable Work under this Contract is restricted by export control laws or regulations.

(c) SELLER shall immediately notify the ARINC Procurement Representative if SELLER is listed in any Denied Parties List or if SELLER's export privileges are otherwise denied, suspended, or revoked in whole or in part by any U.S. Government entity or agency. At ARINC's request, SELLER will provide ARINC with all data ARINC may need to apply for and obtain an Export License or applicable License Exception.

## 12. Extras

Work shall not be supplied in excess of quantities specified in the Contract. SELLER shall be liable for handling charges and return shipment costs for any excess quantities.

## 13. Furnished Property

(a) ARINC may provide to SELLER property owned by either ARINC or its customer (Furnished Property). Furnished Property shall be used only for the performance of this Contract.

(b) Title to Furnished Property shall be retained by ARINC or its customer. SELLER shall clearly mark (if not already marked) all Furnished Property to show ownership.

(c) Except for reasonable wear and tear, SELLER assumes all risk of loss, destruction, or damage of Furnished Property while in SELLER's possession, custody, or control. Upon request, SELLER shall provide ARINC with adequate proof of insurance against such risk of loss. SELLER shall promptly notify ARINC of any loss or damage. Without additional charge, SELLER shall manage, maintain, and preserve Furnished Property in accordance with good commercial practice.

(d) At ARINC's request or at completion of this Contract the SELLER shall submit, in an acceptable form, inventory lists of Furnished Property and shall deliver or make such other disposal as may be directed by ARINC.

## 14. Gratuities and Kickbacks

No gratuities (in the form of entertainment, gifts, or otherwise) or kickbacks shall be offered or given by SELLER to any employee of ARINC with a view toward securing favorable treatment as a supplier.

## 15. Importer of Record

(Applies only if the Contract involves importation of Work into the United States).

(a) If elsewhere in the Contract ARINC is indicated as importer of record, SELLER warrants that all sales hereunder are or will be made at not less than fair value under the United States Anti-Dumping Laws (19 U.S.C.

1673 et seq.).

(b) If elsewhere in the Contract ARINC is not indicated as importer of record, then SELLER agrees that:

   (i) ARINC will not be a party to the importation of Works, the transactions represented by this Contract will be consummated after importation, and SELLER will neither cause nor permit ARINC's name to be shown as "Importer of Record" on any customs declaration; and

   (ii) Upon request and where applicable, SELLER will provide to ARINC a properly executed Customs Form 7501, Customs Entry.

## 16. Indemnification

(a) The SELLER shall indemnify ARINC against all liability that may result from any claim, action, or suit by any person, based on any alleged injury to or death of any person or damage to or loss of any property that may occur or that may be alleged to have been caused by the SELLER in the course of performance of this Contract by the SELLER. The SELLER shall pay all charges of attorneys in connection therewith and, if any judgment shall be rendered against ARINC in any such action or actions, the SELLER shall satisfy and discharge the same without cost or expense to ARINC. However, this indemnity shall not apply to claims, actions, or suits resulting from ARINC's negligence.

(b) ARINC shall indemnify the SELLER against all liability that may result from any claim, action, or suit by any person, based on any alleged injury to or death of any person or damage to or loss of any property that may occur or that may be alleged to have been caused by ARINC in the course of performance of this Contract. ARINC shall pay all charges of attorneys in connection therewith and, if any judgment shall be rendered against the SELLER in any such action or actions, ARINC shall satisfy and discharge the same without cost or expense to the SELLER.

## 17. Independent Contractor Relationship

(a) SELLER is an independent contractor in all its operations and activities hereunder. The employees used by SELLER to perform Work under this Contract shall be SELLER's employees exclusively, without any relation whatsoever to ARINC, and shall not be entitled to participate in or receive any of ARINC's employee benefits.

(b) SELLER shall be responsible for any costs or expenses including attorneys' fees, all expenses of litigation and settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, relating in any way to or affecting the performance of any of its obligations under this Contract.

## 18. Information of ARINC

Information provided by ARINC to SELLER remains the property of ARINC. SELLER agrees to comply with the terms of any confidential disclosure agreement with ARINC and to comply with all proprietary information markings and restrictive legends applied by ARINC to anything provided hereunder to SELLER. SELLER agrees not to use any ARINC-provided information for any purpose except to perform this Contract and agrees not to disclose such information to third parties without the prior written consent of ARINC.

## 19. Information of SELLER

SELLER shall not provide any proprietary information to ARINC without prior execution by ARINC of a confidential disclosure agreement.

## 20. Inspection and Acceptance

(a) ARINC and its customer may inspect all Work at reasonable times and places, including, when practicable, during manufacture and before shipment. SELLER shall provide all information, facilities, and assistance necessary for safe and convenient inspection without additional charge.

(b) No such inspection shall relieve SELLER of its obligations to furnish all Work in accordance with the requirements of this Contract. ARINC's final inspection and acceptance shall be at destination unless otherwise specified in this Contract.

(c) SELLER shall not retender rejected Work without disclosing the corrective action taken.

## 21. Insurance and Liability to Third Parties

In the event that SELLER, its employees, agents, or subcontractors enter ARINC's or its customer's premises for any reason in connection with this Contract, SELLER, as well as its subcontractors and lower-tier subcontractors, shall procure and maintain worker's compensation, comprehensive general liability, bodily injury, and property damage insurance in reasonable amounts, and such other insurance as ARINC may require, as stated in the contract schedule, and shall comply with all site requirements. Such insurance shall be written through a licensed carrier, with a financial rating of no less than A-, in the respective state of operation and shall meet all legal minimum requirements of same state. SELLER shall indemnify and hold harmless ARINC, its officers, employees, and agents from any and all losses, costs, claims, causes of action, damages, liabilities, and expenses, including (but not limited to) attorneys' fees, all expenses of litigation and settlement, and court costs, by reason of property damage or personal injury to any person caused in whole or in part by the actions or omissions of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier. SELLER shall provide ARINC thirty (30) days advance written notice prior to the effective date of any cancellation or change in the term or coverage of any of SELLER's required insurance. If requested, SELLER shall send a Certificate of Insurance showing SELLER's compliance with these requirements. SELLER shall name ARINC as an additional insured for the duration of this Contract. Insurance maintained pursuant to this clause shall be considered primary as respects the interest of ARINC and is not contributory with any insurance which ARINC may carry.

## 22. Intellectual Property

(a) Unless otherwise agreed by ARINC and SELLER, SELLER agrees and understands that the Work performed hereunder is Work for Hire and as such SELLER agrees that ARINC shall be the owner of all inventions, technology, designs, works of authorship, mask works, technical information, computer software, business information, and other information conceived, developed, or otherwise generated in the performance of this Contract by or on behalf of SELLER. SELLER hereby assigns and agrees to assign all right, title, and interest in the foregoing to ARINC, including (without limitation) all copyrights, patent rights, and other intellectual property rights therein and further agrees to execute, at ARINC's

request and expense, all documentation necessary to perfect title therein in ARINC. SELLER agrees that it will maintain and disclose to ARINC written records of, and otherwise provide ARINC with full access to, the subject matter covered by this clause and that all such subject matter will be deemed information of ARINC and subject to the protection provisions of the clause entitled *Information of ARINC*. SELLER agrees to assist ARINC, at ARINC's request and expense, in every reasonable way, in obtaining, maintaining, and enforcing patent and other intellectual property protection on the subject matter covered by this clause.

(b)  If SELLER and ARINC agree that performance under this Contract requires the provision or use of any proprietary programs of SELLER or of SELLER's suppliers such that ARINC and SELLER agree that paragraph (a) of this clause is not applicable to a portion of the Work, then, absent agreement of ARINC and SELLER to the contrary, SELLER shall specifically identify such proprietary programs to ARINC and shall grant to ARINC a perpetual worldwide, paid-up license or sublicense to use, copy, modify, sublicense, and create derivative works from any such proprietary programs. Upon request by ARINC, SELLER shall provide all documentation supporting such licensing rights, including copies of licenses granted by SELLER's suppliers to SELLER. SELLER shall defend and hold ARINC harmless from any and all claims arising in whole or in part from SELLER's failure to comply with this section. There shall be no additional charge for such license or sublicense beyond the price for the work to be performed under this Contract.

(c)  SELLER warrants that the Work performed and delivered under this Contract will not infringe or otherwise violate the intellectual property rights of any third party in the United States or any foreign country. SELLER agrees to defend, indemnify, and hold harmless ARINC and its customers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys' fees, arising out of any action by a third party that is based on a claim that the Work performed or delivered under this Contract infringes or otherwise violates the intellectual property rights of any person or entity.

(d)  Unless otherwise specified in this Contract, commercial off-the-shelf software delivered hereunder shall be the most recent revision issued by SELLER. If SELLER issues a new version within 120 days after delivery to ARINC, SELLER shall provide to ARINC at no additional charge a usable copy of the new version and an equivalent license.

## 23. Language and Standards

All reports, correspondence, drawings, notices, markings, and other communications shall be in the English language. The English version of the Contract shall prevail. Unless otherwise provided in writing, all documentation and Work shall use the units of U.S. standard weights and measures.

## 24. New Materials

Unless otherwise specified in this Contract, the Work to be delivered hereunder shall consist of new materials (not used or reconditioned, or of such age as to impair usefulness or safety)

## 25. Offset Credit and Cooperation

All offset or countertrade credit value resulting from this Contract shall accrue solely to the benefit of ARINC. SELLER agrees to cooperate with ARINC in the fulfillment of any foreign offset or countertrade obligations.

## 26. Packing and Shipment

(a)  Unless otherwise specified, all Work is to be packed in accordance with good commercial practice to prevent damage and deterioration during shipping, handling, and storage.

(b)  A complete packing list shall be enclosed with all shipments. SELLER shall mark containers or packages with necessary lifting, loading, and shipping information, including the ARINC contract number, item number, dates of shipment, and the names and addresses of consignor and consignee. Bills of lading shall include this Contract number.

(c)  For Work shipped within the United States, unless otherwise specified, delivery shall be FOB Destination. For Work imported into the United States, unless otherwise specified, delivery shall be DDP ARINC's facility indicated on the title page of the Contract in accordance with *INCOTERMS 1990*.

## 27. Payments, Taxes, and Duties

(a)  Unless otherwise provided, terms of payment shall be net thirty (30) days from the latest of the following: (i) ARINC's receipt of the SELLER's proper invoice, (ii) Scheduled delivery date of the Work; or (iii) Actual delivery of the Work. ARINC shall have a right of setoff against payments due or at issue under this Contract or any other Contract between the Parties.

(b)  Payment shall be deemed to have been made as of the date of ARINC's mailed payment or electronic funds transfer.

(c)  Unless otherwise specified, prices include all applicable federal, state, and local taxes, as well as duties, tariffs, and similar fees imposed by any government, all of which shall be listed separately on the invoice. Prices shall not include any taxes, impositions, charges, or exactions for which ARINC has furnished a valid exemption certificate or other evidence of exemption.

(d)  All taxes, assessments, and similar charges levied with respect to or upon any such products or Work owned by ARINC while in SELLER's possession or control, and for which no exemption is available, shall be borne by SELLER.

(e)  The prices stated in the Contract are firm, fixed prices in United States dollars.

## 28. Precedence

Any inconsistencies in this Contract shall be resolved in accordance with the following (in descending order of precedence): (a) face of the Purchase Order, release document or schedule (which shall include continuation sheets), as applicable, including any special terms and conditions; (b) any master agreement, such as corporate, sector, or blanket agreements; (c) these General Provisions; and (d) Statement of Work.

29. Quality Control System

Unless this Contract contains other specific quality requirements,

(a) SELLER shall provide and maintain a quality control system to an industry-recognized quality standard for the Work covered by this Contract.

(b) Records of all quality control inspection work by SELLER shall be kept complete and made available to ARINC and its customers.

30. Release of Information

Except as required by law, no public release of any information, or confirmation or denial of same, with respect to this Contract or the subject matter hereof, will be made by SELLER without the prior written approval of ARINC.

31. Stop Work Order

(a) SELLER shall stop Work for up to ninety (90) days in accordance with the terms of any written notice received from ARINC, or for such longer period of time as the Parties may agree, and shall take all reasonable steps to minimize the incurrence of costs allocable to the Work covered by this Contract during the period of Work stoppage.

(b) Within such period, ARINC shall either terminate or continue the Work by written order to SELLER. In the event of a continuation, an equitable adjustment, in accordance with the principles of the *Changes* clause, shall be made to the price, delivery schedule, or other provision affected by the Work stoppage, if applicable, provided that claim for equitable adjustment is made within thirty (30) days after such continuation.

32. Survivability

If this Contract is terminated for default or convenience, SELLER shall not be relieved of those obligations contained in this Contract for the following provisions:

- Applicable Laws, Clause No. 2
- Export Control, Clause No. 11
- Independent Contractor Relationship, Clause No. 17
- Information of ARINC, Clause No. 18
- Intellectual Property, Clause No. 22
- Release of Information, Clause No. 30
- Warranty, Clause No. 36

33. Termination for Convenience

(a) For specially performed Work, ARINC may terminate part or all of this Contract for its convenience by giving written notice to SELLER. ARINC's only obligation shall be to pay SELLER a percentage of the price reflecting the percentage of the Work performed prior to the notice of termination, plus reasonable charges that SELLER can demonstrate to the satisfaction of ARINC using generally accepted accounting principles, that have resulted from the termination. SELLER shall not be paid for any Work performed or costs incurred that reasonably could have been avoided.

(b) In no event shall ARINC be liable for lost or anticipated profits, unabsorbed indirect costs or overhead, or any sum in excess of the total Contract price. SELLER's

termination claim shall be submitted within ninety (90) days from the effective date of the termination.

(c) For other than specially performed Work, ARINC may terminate part or all of this Contract for its convenience by giving written notice to SELLER and ARINC's only obligation to SELLER shall be payment of a mutually agreed-upon restocking or service charge.

(d) SELLER shall continue all Work not terminated.

34. Timely Performance

(a) Time is of the essence in this Contract. SELLER's timely performance is a critical element of this Contract.

(b) Unless advance shipment has been authorized in writing by ARINC, ARINC may store, at SELLER's expense, or return, shipping charges collect and at SELLER's risk, all Work received in advance of the scheduled delivery date.

(c) If SELLER becomes aware of difficulty in performing the Work, SELLER shall promptly notify ARINC, in writing, giving pertinent details. This notification shall not change any delivery schedule.

(d) In the event of a termination for convenience or change, no claim will be allowed for any manufacture or procurement in advance of SELLER's normal flow time unless ARINC has given prior written consent.

35. Waiver, Approval, and Remedies

(a) Failure by ARINC to enforce any of the provisions of this Contract shall not be construed as a waiver of the requirements of such provisions, or as a waiver of the right of ARINC thereafter to enforce each and every such provision.

(b) ARINC's approval of documents shall not relieve SELLER from complying with any requirements of this Contract.

(c) The rights and remedies of ARINC in this Contract are cumulative and in addition to any other rights and remedies provided by law or in equity.

36. Warranty

(a) In addition to SELLER's standard warranty, SELLER warrants that all Work furnished pursuant to this Contract shall strictly conform to applicable specifications, drawings, samples, descriptions, and other requirements of this Contract and be free from defects in design, material, and workmanship. All warranties shall survive inspection, test and acceptance of, and payment for, the Work. All warranties shall run to ARINC and its successors, assigns, and customers. The warranty shall extend for a period of one (1) year after ARINC's final acceptance unless a different period is set forth elsewhere in this Contract. If any nonconformity of the Work appears within that time, SELLER shall promptly repair, replace, or reperform the Work, at ARINC's option. Transportation of replacement Work, return of nonconforming Work, and repeat performance of Work shall be at SELLER's expense. Work required to be corrected or replaced shall be subject to this provision and the Inspection and Acceptance provision of this Contract in the same manner and to the same extent as Work originally delivered under this Contract. If repair, replacement, or reperformance of Work is not timely, ARINC may elect to return the nonconforming Work or

repair, replace Work, or reprocure the Work at SELLER's expense.

(b)   SELLER further warrants that all software, firmware, and hardware (products) provided by SELLER, having date-dependent functionality containing or calling on a calendar function to process date and time data, will accurately process the date and time data (including, but not limited to, inputting, storing, manipulating, comparing, calculating, updating, displaying, outputting, and transforming such dates and data).

(1)   In the event of a discovery of any date-dependent functionality noncompliance, the discovering party shall notify the other party within five (5) business days. At ARINC's option, the noncompliant products shall be repaired or replaced by SELLER within ten (10) business days of such notice at no cost to ARINC. The date-dependent functionality warranty shall run to ARINC and its successors, assigns, and customers, and shall extend indefinitely after ARINC's final acceptance.

(2)   Nothing in this provision shall be construed to limit any other rights under this Contract, at law or in equity that ARINC may have with respect to date-dependent functionality compliance.

*EXHIBIT C*

1  Roger W. Strassburg, Jr. (No. 16314)
2  **ROGER STRASSBURG, ESQ., P.L.L.C.**
   9117 East Los Gatos Drive
3  Scottsdale, AZ 85225
   Telephone:  480.585.3550
4  roger.strassburg@cox.net

5  Attorneys for Plaintiffs

6

7                  **IN THE UNITED STATES DISTRICT COURT**

8                     **FOR THE DISTRICT OF ARIZONA**

9  **MILLENIUM 3 TECHNOLOGIES,**
   **INC.,** an Arizona Corporation,
                                          No.
10         Plaintiff,

11 v.                                     **COMPLAINT**

12 **ARINC, Inc.,** a Delaware Corporation,  (Hon.:                    )

13         Defendant.

14

15     For its Complaint, the Plaintiff, Millennium 3 Technologies, Inc. ("M3T") hereby

16 states as follows:

17                                  **Parties**

18

19     1.     M3T is a corporation formed under the laws of the State of Arizona with its

20 principal place of business in Maricopa County, Arizona, within this judicial District.

21     2.     ARINC, Inc. ("ARINC") is a corporation formed under the laws of the State

22 of Delaware with its principal place of business in Annapolis, Maryland, outside of this

23 judicial District.

24

25

26

27

28

**ROGER STRASSBURG, ESQ., P.L.L.C.**
9117 East Los Gatos Drive
Scottsdale, AZ 85255
480.585.3550

ROGER STRASSBURG, ESQ., P.L.L.C.
9117 East Los Gatos Drive
Scottsdale, AZ 85255
480/585-3550

1

2

**Jurisdiction**

3.     This Court has jurisdiction by virtue of the diversity of citizenship of the parties under 28 USC §1332 and the Federal Declaratory Judgments Statute, 28 U.S.C. §2201 et seq.

4.     Venue is appropriate in this judicial District under 28 U.S.C. §1391 because the occurrences on which this Complaint is based occurred in this judicial District and the Defendant does business on a regular basis in this judicial District.

**Complaint**

5.     On or about March 22, 2004, the Defendant entered into a certain subcontract, No. 174609 with M3T (the "Subcontract"), for the installation of certain portions of the Passenger Information and Paging System ("PIPS"), at Phoenix Sky Harbor International Airport which Defendant, as the prime contractor, had obligated itself to construct pursuant to Contract No. 108705 between Defendant and the City of Phoenix (the "Prime Contract").

6.     M3T timely performed all of its work under the Subcontract by installing the audio portion of the PIPS and certain other work called for by the Subcontract and certain change orders there to.

7.     Despite that M3T timely performed all of its work, ARINC has not paid M3T all amounts due under the Subcontract and change orders.

8.     M3T has not been paid in excess of $900,000 which is currently due and owing to M3T under the Subcontract.

9.    MCT has satisfied all conditions precedent under the Subcontract to payment of all balances owed under the Subcontract.

### COUNT I: DECLARATORY JUDGMENT

10.    M3T hereby realleges as if fully set forth herein paragraphs 1 through 9.

11.    The General Provisions for Commercial Subcontracts and Purchase Orders ("General Conditions") of the Subcontract provide that all disputes between the parties are to be settled by arbitration under the rules of the American Arbitration Association. (General Conditions, §9).

12.    The General Conditions also provided that the place of the arbitration was to be in Washington, DC.  (General Conditions,§9).

13.    The General Conditions also provided that the Subcontract was to be governed by the laws of the State of Maryland, excluding its choice of laws rules.  (General Conditions §2).

14.    The substantive law of the State of Arizona provides that, in construction contracts,  choice of law clauses or forum selection clauses selecting foreign law or forums are void as against the public policy of the State of Arizona.  (A.R.S. §32-1129.05).

15.    All of M3T's work under the Subcontract took place in Maricopa County, Arizona, at Phoenix Sky Harbor Airport.

16.    The Subcontract is a "construction contract" under A.R.S. §32-1129.05.

17.    The choice of law clause and forum selection clause in the Subcontract are void as against Arizona law.

ROGER STRASSBURG, ESQ., P.L.L.C.
9117 East Los Gatos Drive
Scottsdale, AZ 85255
480 585 3450

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ROGER STRASSBURG, ESQ., P.L.L.C.**
9117 East Los Gatos Drive
Scottsdale, AZ 85255
480-585-8880

**Demand**

WHEREFORE PLAINTIFF DEMANDS AS FOLLOWS:

a.   A judgment by this Court declaring that the provisions in the General Conditions of the Subcontract with select Maryland law and a foreign forum for the arbitration are void as against the public policy of Arizona.

b.   Any and all other legal or equitable relief to which Plaintiff may be entitled, including costs and attorneys fees under A.R.S. §§12-341 and 341.01.

RESPECTFULLY SUBMITTED this _____ day of  June 2008.

**ROGER STRASSBURG, ESQ., P.L.L.C.**


By: _____

Roger W. Strassburg, Jr. (016314)


_____

4

*EXHIBIT D*

1600 South Main Plaza
Suite 180
Walnut Creek, California 94596
Telephone (925) 974-1110
Facsimile (925) 974-1122
----------
Mission Viejo

# CELLA
# LANGE &
# CELLA LLP

Writer's email
blcella@cellalange.net

Writer's Direct Dial Number
(925) 974-1112

July 21, 2008

Roger W. Strassburg, Esq.
Roger W. Strassburg, P.L.L.C.
9117 East Los Gatos Dr.
Scottsdale, AZ 85255

_Re: ARINC/M3T_

Dear Roger:

This follows-up on your letter of July 14, 2008, and our telephone conversation of today:

1) ARINC is willing to proceed with mediation, but M3T is not interested in mediation;

2) M3T wishes to proceed with arbitration in Phoenix, using a less expensive procedure than AAA;

3) ARINC believes that any arbitration should be in D.C., as agreed by the parties in the Contract;

4) You will provide me authority for the proposition that 32-1129.05 precludes the parties choice of D.C., including in light of the Federal Arbitration Act.

I look forward to speaking to you this week about the arbitration.

Sincerely,

Brian L. Cella

BLC/rl

*EXHIBIT E*

# CELLA LANGE & CELLA LLP

1600 South Main Plaza
Suite 180
Walnut Creek, California 94596
Telephone (925) 974-1110
Facsimile (925) 974-1122
---------
Mission Viejo

Writer's email
blcella@cellalange.net

Writer's Direct Dial Number
(925) 974-1112

August 8, 2008

Roger W. Strassburg, Esq.
Roger W. Strassburg, P.L.L.C.
9117 East Los Gatos Dr.
Scottsdale, AZ 85255

Re: ARINC/M3T

Dear Roger:

We have your email of Monday evening advising of M3T's lawsuit filed against ARINC in the District Court for Arizona. ARINC respectfully requests that you dismiss the lawsuit. It is ill-founded, and contrary to clear Arizona and Ninth Circuit authority. Further, ARINC demands that arbitration proceed in the District of Columbia in accordance with the contract between M3T and ARINC.

Sincerely,

Brian L. Cella

BLC/rl

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ARINC INCORPORATED | MILLENNIUM 3 TECHNOLOGIES, LLC |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Anne Arundel, MD
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Dwight W. Stone, II
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, MD 21202
(410) 347-8700

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and <u>one</u> in a corresponding Nature of Suit)

| ○ **A.** *Antitrust* | ○ **B.** *Personal Injury/ Malpractice* | ○ **C.** *Administrative Agency Review* | ○ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Medical Malpractice <br> ☐ 365 Product Liability <br> ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act <br><br> **Social Security:** <br> ☐ 861 HIA ((1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g) <br> **Other Statutes** <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. <br><br> *(If Antitrust, then A governs)* |

| ◉ **E.** *General Civil (Other)* | **OR** | ○ **F.** *Pro Se General Civil* | | |
|---|---|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

9 U.S.C. 4; Petition to Compel Arbitration

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐  NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE   8-25-08   SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.